Albert A. Ciardi, III, Esquire
Thomas D. Bielli, Esquire
CIARDI CIARDI & ASTIN
One Commerce Square, Suite 1930
2005 Market Street
Philadelphia, PA  19103
(215) 557-3550
Counsel to the Debtor

**UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: : | |
| : | CHAPTER 11 |
| GREATER GERMANTOWN HOUSING : | |
| DEVELOPMENT CORPORATION : | |
| : | BANKRUPTCY NO.  10-12614 (SR) |
| DEBTOR. : | |
| : | |

**MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR POST-PETITION
FINANCING AND FOR EXPEDITED CONSIDERATION**

Greater Germantown Housing Development Corporation ("Debtor" or "Debtor-in-Possession"), through its undersigned counsel, Ciardi Ciardi & Astin, respectfully submits this Motion, pursuant to §364(c) and §364(d) of Title 11 of the United States Code, 11 U.S.C. §§101 et seq. (as amended, the "Bankruptcy Code") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), for an Order: (i) permitting Debtor to obtain secured post-petition financing for advances made by Parke Bank to Debtor, pursuant to Post-Petition Loan Documents (as hereinafter defined), for the purpose of repairing roof damage and replacing air conditioning units in the Burgess Center (as hereinafter defined); (ii) granting Parke Bank a superpriority lien and security interest in all of the Debtor's property to secure the Debtor's obligations under the Post-Petition Loan Documents; and (iii) granting Parke Bank priority over any or all administrative expenses of the kinds specified in §503(b) and §507(b) of the Bankruptcy Code.  In support of the Motion, Debtor alleges as follows:

## BACKGROUND

1. On April 1, 2010 (the "Petition Date"), Debtor filed for relief under Chapter 11 of the Bankruptcy Code and has been acting as a debtor-in-possession since that time.

2. Debtor is the owner and operator of the real property located at 200-220 W. Chelten Avenue, Philadelphia, Pennsylvania, otherwise known as the Burgess Center.

3. The Burgess Center is a commercial shopping center that secures a $7 million loan to Debtor from Parke Bank (the "Loan"). Parke Bank holds the senior lien on the Burgess Center.

4. Earn Center is a tenant at the Burgess Center and under its lease with Debtor, Debtor is required to make certain repairs to the leased premises, including roof and HVAC repair.

5. PA Parole Board is also a tenant at the Burgess Center and under its lease with Debtor, Debtor is required to make certain repairs to the leased premises, including plumbing repairs.

6. The repairs to the Burgess Center are necessary to keep the PA Parole Board and Earn Center as tenants. In fact, Earn Center ceased making rental payments and will not pay rent until repairs are made to the roof and the HVAC.

7. Debtor needs funds to make the necessary repairs to the Burgess Center and to pay debt service on Parke Bank's first mortgage lien on the Burgess Center. However, at the present time, Debtor does not have any revenue, any liquid assets or other financing to make the repairs to the Burgess Center and/or debt service to Parke Bank. Parke Bank has agreed to advance funds so that Parke Bank and/or Debtor can take such steps as are necessary to protect

8. Attached as Exhibit A are two invoices detailing the repairs to be made for the Earn Center leased space and their cost. Debtor has requested and Parke Bank has agreed to advance funds to make the repairs set forth in the invoices, specifically conditioned on GM Holdings, LLC ("GM Holdings"), the contractor listed on the invoices, being the sole provider of all work associated with such repairs.

9. Debtor has no ability at the present time to obtain unsecured credit. Indeed, Debtor has not been able to obtain any funding from any lender other than Parke Bank based upon the financial difficulties it is experiencing.

## RELIEF REQUESTED

10. Debtor seeks the entry of an Order: (A) permitting Debtor to obtain up to $200,000.00 of secured post-petition financing for advances made by Parke Bank to Debtor for the purposes of (1) making repairs to the space leased at the Burgess Center to the Earn Center and PA Parole Board and (2) to pay Parke Bank monthly debt service on the Loan; (ii) granting Parke Bank a superpriority lien and security interest in all of Debtor's property, including the Burgess Center; and (iii) granting Parke Bank priority over any or all administrative expenses of the kinds specified in §503(b) and §507(b) of the Bankruptcy Code.

## BASIS FOR RELIEF REQUESTED

11. Section 364 of the Bankruptcy Code provides, in relevant part, that:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2) secured by a lien on property of the estate not is not otherwise subject to a lien;

(d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –

(A) the trustee is unable to obtain such credit otherwise;

and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

12. As mentioned above, given Debtor's current financial situation and insufficient sources of working capital, Debtor is unable to obtain credit on an unsecured basis or on the basis of providing a general administrative claim. Indeed, Debtor has been unable to obtain credit on any basis more favorable to Debtor than the terms and conditions offered by Parke Bank.

13. Further, Debtor's need for the post-petition financing to make the repairs to the Burgess Center and to pay Parke Bank debt service on the Loan is immediate and critical. Absent the post-petition financing, Debtor will not be able to make repairs to the Burgess center and risk losing the Earn Center and PA Parole Board as tenants, along with vital rental income. In short, the requested post-petition extension of credit is necessary to preserve and protect property of the estate, the Burgess Center, ensure the generation of rental income and to adequately protect Parke Bank's secured interest in the Burgess Center.

14. Parke Bank is the only lender willing to provide the funds needed by the Debtor on a secured basis. Parke Bank's willingness to extend post-petition financing to Debtor is

15. The grant of security interests and liens to Parke Bank, including liens that will prime existing liens, will enable the Bank to provide post-petition financing to Debtor and allow Debtor to make necessary repairs to the Burgess Center and to adequately protect Parke Bank's interest in the Burgess Center.

16. Debtor's request for post-petition credit secured by priming liens on its properties, including the Burgess Center, is proper, reasonable and necessary to continue the Debtor's operations and preserve property of the estate.

17. Insofar as financing statements or other documents, including mortgage documents, are required to be filed and/or recorded in connection with the Post-Petition Loan Documents, Debtor requests permission to do so and also requests modification of the automatic stay to allow for the same.

18. Overall, it is in the best interest of Debtor and all parties that Debtor have the ability to borrow funds from Parke Bank.

19. The Court has the authority under §364(c)(2) and §364(d) of the Bankruptcy Code to authorize borrowing secured by a lien on unencumbered property and/or secured by a lien that is senior or equal to an existing lien on property of the estate.

20. Further, under §364(c)(1) of the Bankruptcy Code, the Court may authorize borrowing with a priority over any or all administrative expenses.

21. Based upon the foregoing, Debtor should be authorized to obtain post-petition financing in the amount of $200,000.00 from Parke Bank that is secured by superpriority lien

## **REQUEST FOR ORDER SHORTENING TIME**

22. Rule 4001(c) of the Bankruptcy Rules provides that a final hearing on a motion to obtain credit pursuant to §364 of the Bankruptcy Code may not be commenced earlier than 15 days after the service of such motion. *See* Fed. R. Bankr. P. 4001(c).

23. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the extension of credit insofar as it is necessary to avoid immediate and irreparable harm to a debtor's estate. *See* Fed. R. Bankr. P. 4001(c)(2).

24. Given the need to make the repairs to the Burgess Center as quickly as possible, it is necessary and critical for Debtor to immediately obtain the requested post-petition financing in the amount of $200,000.00 to make the payments outlined above.

25. The Debtor requests that an expedited hearing on the Motion be scheduled for June 16, 2010 at 1:30 p.m., or as soon thereafter as the Court's calendar permits.

WHEREFORE, Debtor respectfully requests that this Court enter an Order in the form attached hereto, and for such other and further relief as this Court deems just and proper.

CIARDI CIARDI & ASTIN

Dated: June 11, 2010        By:  */s/ Thomas D. Bielli*
                                 Albert A. Ciardi, III, Esquire
                                 Thomas D. Bielli, Esquire
                                 One Commerce Square, Suite 1930
                                 2005 Market Street
                                 Philadelphia, PA  19103
                                 (Tel) 215-575-3550
                                 (Fax) 215-575-3551
                                 Attorneys for the Debtor and the
                                 Debtor-in-Possession